# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | |
|---|---|
| MARSHALL CARO, : | |
|     Plaintiff, : | |
| : | |
|     v. : | Civil No. 3:09-CV-1353 (PCD) |
| : | |
| ERIC WEINTRAUB, DAVID WEINTRAUB, and : | |
| BLUETEK, INC. : | |
|     Defendants. : | |

## RULING ON AND DEFENDANTS' MOTION TO DISMISS AND PLAINTIFF'S MOTIONS TO AMEND

Plaintiff *pro se*, Marshall Caro, brought this action on August 26, 2009 against Defendants Eric Weintraub, David Weintraub, and Bluetek, Inc. for invasion of privacy, intentional infliction of emotional distress, and intentional spoliation of evidence. On November 19, 2009, Defendants moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). On December 4, 2009 and January 12, 2010, Plaintiff moved to amend his complaint. For the reasons stated herein, Defendants' motion to dismiss [Doc. No. 21] is **granted in part and denied in part** and Plaintiff's motions to amend [Doc. Nos. 33, 46] are **granted in part and denied in part**.

## I.    Background

Plaintiff's original complaint, which was filed on August 26, 2009, arises out of Plaintiff's stepsons' recording of a conversation at Plaintiff's home on February 2, 2008.[1] In early 2008, Plaintiff shared a home in Greenwich, Connecticut with his wife Elizabeth Caro, who suffered from lung cancer and was terminally ill. On February 2nd, Defendants David Weintraub

---

[1]    The allegations set forth in the original complaint are accepted as true for purposes of deciding the motion to dismiss and motions to amend.

and Eric Weintraub, who are Elizabeth Caro's sons and Plaintiff's stepsons, visited Mrs. Caro at her home, along with their spouses and Eric Weintraub's children. On that day, Thomas Corrigan, Mrs. Caro's brother, also visited Plaintiff's home with his wife, Lynn Corrigan. (Compl. ¶ 2.) Plaintiff brought Mrs. Caro from the bedroom to the kitchen so that she could receive her visitors. (Id. ¶ 4.)

Mrs. Corrigan asked Mrs. Caro to sign a will prepared by Thomas Corrigan, but the draft will contained several provisions that Mrs. Caro found objectionable. Plaintiff reminded Mrs. Corrigan that he and Mrs. Caro had retained Attorney Dan Johnson to prepare wills for them. (Id. ¶¶ 6-8.) Eric and David Weintraub entered the kitchen during the conversation and sat at the kitchen table. (Id. ¶ 9.) Unbeknownst to Plaintiff, David Weintraub used his iPhone, which had been provided to him by his employer Defendant Bluetek, Inc., to record the conversation. Mrs. Caro, Plaintiff and Mrs. Corrigan continued to discuss Mrs. Caro's problems with the draft will prepared by Mr. Corrigan. Mrs. Caro said that she wanted to divide her liquid assets equally between Plaintiff and her two sons and leave her minority interest in the marital home to her sons. (Id. ¶ 11.) Mrs. Caro eventually grew weary during the conversation and said she needed to go to bed. The visitors left.

After the visit, David Weintraub emailed his recordings of the February 2nd conversation to Eric Weintraub, who downloaded the recordings to a Bluetek server and to his laptop computer. Eric Weintraub "edited the recordings to delete portions not to his liking and to move audio segments out of sequence to portray Plaintiff in a false light." (Id. ¶ 21.) He then converted the tampered files into other formats to delete metadata in order to hide his manipulation of the recordings. (Id.)

On February 6th, Mrs. Caro died without completing a will. Plaintiff filed Mrs. Caro's death certificate with the Greenwich Probate Court and filed a Petition for Letters of Administration for Mrs. Caro's estate. Soon after, Eric and David Weintraub filed an Opposition to Plaintiff's Petition for Letters of Administration. Plaintiff learned of David Weintraub's recording of the February 2nd conversation at a hearing before the Greenwich Probate Court on April 21, 2008, during which David Weintraub testified that he had recorded the February 2nd conversation and sought to introduce a copy of the recording into evidence. (Id. ¶ 18.) The recording, which was played in court, was "excerpts of the tampered files prepared by the Defendants, thus portraying the Plaintiff in a false light and slandering the Plaintiff." (Id. ¶ 24.) On April 22, 2008, David Weintraub's attorney sent the Greenwich Probate Court an *ex parte* letter and enclosed a CD identified as the recordings played during the April 21st hearing. The CD contained an altered version of the original recording "with significant deletions and obfuscations." (Id. ¶ 26.)

Plaintiff's original complaint contains the following five counts: 1) invasion of privacy by intrusion upon seclusion; 2) invasion of privacy by portraying Plaintiff in a false light; 3) invasion of privacy by public disclosure of embarrassing facts; 4) intentional infliction of emotional distress; and 5) intentional spoliation of evidence.[2] The complaint alleges that the

---

[2]     This is the second complaint Plaintiff has filed against his stepsons in the District of Connecticut arising out of the February 2nd conversation. On February 27, 2009, Plaintiff filed a complaint in the District of Connecticut against the Weintraub brothers and the attorneys who represented them in probate court. Plaintiff alleged that David Weintraub's recording of the February 2nd conversation was an unlawful interception and disclosure of Plaintiff's oral communications with his wife in violation of the Omnibus Crime Control and Safe Streets Act of 1968 ("Title III"), 18 U.S.C. §§ 2510-21. Plaintiff also brought a number of common law causes of action, including invasion of privacy, intentional spoliation of evidence, and fraudulent misrepresentation. On July 31, 2009, this Court dismissed the Title III claims for failure to state of claim, finding that Plaintiff

Weintraub brothers invaded Plaintiff's privacy by recording the February 2nd conversation and playing spoliated excerpts of the recording at the April 21, 2008 hearing, which embarrassed Plaintiff by publicly disclosing his intimate conversation with his late wife. Plaintiff also alleges that the Weintraub brothers edited and deleted certain portions of the recording, such as Mrs. Caro's statements regarding her and Plaintiff's ownership of the marital home, to cast Plaintiff in a false light and to deprive Plaintiff of his ownership interests in his marital home. As a result of the spoliated recording, Plaintiff claims that he was wrongfully denied Letters of Administration for his late wife's estate.

On November 19, 2009, Defendants moved to dismiss all claims pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff never filed a response to the motion to dismiss. On December 4, 2009, Plaintiff moved to amend his complaint "to better state the facts and claims as [they] appear in his original complaint" but did not enclose a proposed amended complaint with his motion. On January 12, 2010, Plaintiff filed a second motion to amend, which included a proposed amended complaint.

The proposed amended complaint removes two counts appearing in the original complaint–invasion of privacy by portraying plaintiff in a false light and invasion of privacy by public disclosure of embarrassing facts–and adds two counts that are based on the factual allegations recited in the original complaint–interference with Plaintiff's inheritance and violation of Title III of the Omnibus Crime Control and Safety Street Act ("Title III"), 18 U.S.C.

---

had no reasonable expectation of privacy in the February 2nd conversation because it occurred in the presence of the Weintraub brothers. The Court declined to exercise supplemental jurisdiction over the remaining state law claims. Caro v. Weintraub, No. 3:09cv00335 (PCD), 2009 WL 2358919 (D.Conn. July 31, 2009).

§ 2511.  The proposed amended complaint also contains new factual allegations against Eric

Weintraub, which are the basis of an additional count alleging a violation of the Computer Fraud

and Abuse Act ("CFAA"), 18 U.S.C. § 1030.  Plaintiff alleges that, in the days following Mrs.

Caro's death, Plaintiff gave Eric Weintraub permission to use Plaintiff's computer while in his

home solely for the purpose of checking his e-mail.  While using the computer, he allegedly

deleted certain financial files, including spreadsheets of Mrs. Caro's partnership accounts with

Plaintiff and her loans to the Weintraub brothers and the Corrigans, and changed Mrs. Caro's

personal e-mail password.  (Am. Compl. ¶¶ 31-34).  The proposed amended complaint contains

six counts in total: 1) interference with Plaintiff's inheritance; 2) invasion of privacy by intrusion

upon seclusion; 3) intentional infliction of emotional distress; 4) violation of 18 U.S.C. § 1030

based on "Eric Weintraub's wanton and reckless erasures from Plaintiff's computer of the

evidence of his indebtedness . . . to Elizabeth" (Id. ¶ 76); 5) violation of 18 U.S.C. § 2511; and 6)

intentional spoliation of evidence.

Defendants' motion to dismiss the original complaint and Plaintiffs' motions to amend

his complaint are the subject of the instant ruling.

## II.  Standard of Review

### a) Motion to Dismiss

The purpose of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

"is merely to assess the legal feasibility of the complaint, not to assay the weight of evidence

which might be offered in support thereof."  Ryder Energy Distrib. Corp. v. Merrill Lynch

Commodities Inc., 748 F.2d 774, 779 (2d Cir. 1984) (quoting Geisler v. Petrocelli, 616 F.2d 636,

639 (2d Cir. 1980)).  In ruling on a motion under FED. R. CIV. P. 12(b)(6), the court may consider

only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir. 2007).

The district court may dismiss a claim under FED. R. CIV. P. 12(b)(6) only if the plaintiff's factual allegations are not sufficient "to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

**b) Motion to Amend**

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . ." After this time period has expired, a party may amend its pleadings with the opposing party's permission or leave of the court, which "shall be freely given when justice so requires." FED. R. CIV. P. 15(a)(2). "In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" Victor G. Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc., No. 3:03-CV-222 (JBA), 2004 WL 2381719, at *2 (D. Conn. Sept. 30, 2004) (citing Foman v. Davis, 371 U.S. 178 (1962)). It is the "rare" case in which such leave should be denied. Id.; see also Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991).

**III.    Discussion**

**A) Motion to Dismiss**

Defendants have moved to dismiss all five counts appearing in Plaintiff's original complaint for failure to state a claim. After Defendants' motion to dismiss was filed, Plaintiff moved to amend his complaint. His proposed amended complaint removes two of the five counts–invasion of privacy by portraying Plaintiff in a false light and invasion of privacy by public disclosure of embarrassing facts–appearing in the original complaint. The Court will assume that Plaintiff has abandoned these two claims, and will only address the legal feasibility of the remaining three claims.

Plaintiff never filed a memorandum in opposition to Defendants' motion to dismiss. Pursuant to Local Rule 7(a)(1), "[f]ailure to submit a memorandum in opposition to a motion may be deemed sufficient cause to grant the motion, except where the pleading provide sufficient grounds to deny the motion." The Court, therefore, will grant the motion to dismiss except where the complaint has clearly stated a claim upon which relief can be granted.

**1) Invasion of Privacy by Intrusion Upon Seclusion (Count I in Original Complaint and Count II in Amended Complaint)**

Plaintiff alleges that Defendants intruded on his seclusion by "their surreptitious interception and recording of the private communications of Plaintiff and other communications to which they were not a party at the private residence of Plaintiff and Elizabeth" with the intent of altering the recordings for pecuniary gain. (Compl. ¶¶ 67-68.)

Restatement (Second) Torts defines invasion of privacy by intrusion upon seclusion as "an intentional interference with [the plaintiff's] interest in solitude or seclusion, either as to his person, or as to his private affairs or concerns, of a kind that would be highly offensive to a

reasonable man." Evans v. Blanchard, No. CV 030177251S, 2006 WL 2949115, at *3 (Conn. Super. Ct. Oct. 2, 2006) (quoting 3 Restatement (Second) Torts, § 652B cmt a). Connecticut courts require the plaintiff to allege an offensive intentional intrusion and a privacy interest. Garces v. R&K Spero, Co., No. CV 095025895S, 2009 WL 1814510, at *9 (Conn. Super. Ct. May 29, 2009). The offensive intentional intrusion may be based on a non-physical intrusion, such as a recording. Cavallaro v. Rosado, No. CV054009939, 2006 WL 2949143, at *4 (Conn Super. Oct. 5, 2006) (noting that allegations of wiretapping and eavesdropping have been held sufficient to state an offensive intrusion).

Defendants argue that Plaintiff has no reasonable privacy interest in the February 2nd conversation because the Weintraub brothers and the Corrigans were present in Plaintiff's kitchen during the portion of the February 2nd conversation that was recorded on David Weintraub's iPhone. Because the Weintraub brothers were well within earshot of all communications made during the conversation, the Court agrees that Plaintiff's allegations that the conversation was a private communication between him and his late wife are implausible on their face. See Schmidt v. Devino, 206 F. Supp. 2d 301, 309 (D. Conn. 2001) (holding that plaintiff had no reasonable expectation of privacy in his conversations because he kept his office door open and believed his secretary was listening to the conversations). Although Plaintiff has no reasonable privacy interest in the conversation with respect to the Corrigans and the Weintraub brothers, he may have a reasonable privacy interest with respect to everyone else. In other words, Plaintiff may have reasonably expected that the contents of the conversation would have stayed with those present in the room and not be recorded and shared with others at a later time. The personal subject matter discussed during the conversation lends additional support to

8

Plaintiff's expectation of privacy.

In <u>WVIT, Inc. v. Gray</u>, No. CV 950547689S, 1996 WL 649334 (Conn. Super. Oct. 25, 1996), the Connecticut Superior Court analyzed a claim for invasion of privacy by intrusion upon seclusion based on surreptitious recordings of conversations. In that case, a news director at a television station sued a reporter for recording conversations involving the news director, the reporter and other employees at the station. The reporter asserted that the news director had no privacy interest in the contents of the conversations because they involved the business interests of the television station, not the employees' private affairs. In rejecting the argument and finding that the news director stated a viable claim, the court held:

> [I]t is neither the content of the speech involved nor the location of the encounter which makes [the defendant]'s alleged conduct highly offensive to a reasonable person given the facts of this case as pleaded. The conduct alleged would be highly offensive no matter where it occurred and no matter what it related to. It is the fact of surreptitiously monitoring a fellow employee in and of itself that constitutes the intrusion on that employee's privacy under the circumstances of this case. The intrusion here is on the "person" of the employee, irrespective of content.

<u>Id.</u> at *3. Here, as well, the act of surreptitiously recording an intimate conversation about a family member's will qualifies as an offensive intentional intrusion in private affairs that could be highly offensive to a reasonable person.[3] Therefore, Defendants' motion to dismiss this claim is **denied**.

**2) Intentional Infliction of Emotional Distress (Count IV in Original Complaint and Count**

---

[3] Defendants also argue that the communications contained in the recordings are absolutely privileged because they were published during the course of judicial proceedings. <u>See</u> <u>Petyan v. Ellis</u>, 510 A.2d 1337, 1338 (Conn. 1986). Plaintiff's invasion of privacy claim, however, is based on Defendants' surreptitious recording of an allegedly private conversation, not simply Defendant's publication of that conversation in a judicial proceeding.

III in Amended Complaint)

Plaintiff's claim for intentional infliction of emotional distress is based on David and Eric Weintraub's actions in surreptitiously recording the February 2nd conversation, playing spoliated excerpts of the recordings in court, and slandering Plaintiff in probate court. (Compl. ¶ 46.)

"Liability for intentional infliction of emotional distress requires conduct that exceeds all bounds usually tolerated by decent society. . . . Liability has been found only where the conduct has been so outrageous in character, and do extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Appleton v. Board of Ed. of Town of Stonington, 757 A.2d 1059, 1062 (Conn. 2000) (internal citations and quotation omitted). "Whether an actor's conduct is 'extreme and outrageous' is an issue for the Court in the first instance and a factual question for the jury '[o]nly where reasonable minds disagree' as to whether 'the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency . . .'" Rogers v. Apicella, 606 F. Supp. 2d 272, 293 (D. Conn. 2009) (quoting Appleton, 757 A.2d at 1062).

The Court cannot find as a matter of law that the conduct alleged in the complaint was not so outrageous and extreme as to go beyond all bounds of decency. Recording an intimate family conversation about a dying relative's wishes and altering the recordings to mislead a probate court about the deceased relative's intentions could meet the standard for intentional infliction of emotional distress. The inquiry is fact-intensive and thus cannot be resolved at the pleadings stage. See Garces, 2009 WL 1814510, at *4 (emphasizing the "factual nature" of intentional infliction of emotional distress claims). Therefore, Defendants' motion to dismiss this claim is **denied**.

**3) Intentional Spoliation of Evidence (Count V in Original Complain and Count IV in Amended Complaint)**

Plaintiff's claim for intentional spoliation of evidence is based on the Weintraub brothers' alleged deletion of the original recording of the February 2nd conversation. Plaintiff claims that they edited and deleted portions of the original recording, such as Mrs. Caro's statements that she and Plaintiff owned their home jointly, "with the intent of portraying Plaintiff as unsuited to [a]dminister his late wife's estate and result[ing] in the denial of Plaintiff's Petition for Letters of Administration by Judge Hopper." (Compl. ¶¶ 51-53.) They then destroyed all copies of the original recording with the knowledge that these materials had been the subject of a discovery request by Plaintiff. According to Plaintiff, had the Weintraub brothers not altered the recording, he would have established his legal claim to his and Mrs. Caro's home to the satisfaction of the Administrator. (Id. ¶ 54.) Plaintiff's alleged damages include tens of thousands of dollars in legal fees incurred to appeal the decision of the probate court and to quiet title to the marital residence. (Id. ¶ 55.)

The tort of intentional spoliation of evidence contains the following elements: "(1) the defendant's knowledge of a pending or impending civil action involving the plaintiff; (2) the defendant's destruction of evidence; (3) in bad faith, that is, with intent to deprive the plaintiff of his cause of action; (4) the plaintiff's inability to establish a prima facie case without the spoliated evidence; and (5) damages." Rizzuto v. Davidson Ladders, Inc., 905 A.2d 1165, 1178 (Conn. 2006). The destroyed evidence must be vital to the plaintiff's ability to prevail on his claims. Id. at 1171-72 (holding that plaintiff, who was injured while climbing a ladder manufactured by the defendant, stated a claim for intentional spoliation of evidence based on allegations that the

defendant destroyed the ladder and that the ladder was critical evidence to the plaintiff's product liability claim). See also Taylor v. Awwam, No. CV065001159, 2010 WL 3584873, at * 4 (Conn. Super. Aug. 16, 2010) (granting motion to strike plaintiffs' intentional spoliation of evidence claim because "[t]here is not a hint . . . that the loss of the spoliated evidence rendered plaintiffs unable to establish a prima facie malpractice cause of action").

Here, not only does Plaintiff not allege that the original recording was vital to his probate court case, but his allegations would belie such a claim. Plaintiff has personal knowledge of the contents of the conversation that was recorded. Thus, he is competent to testify regarding his version of the conversation, including any portions he believes were deleted. Plaintiff's testimony is an alternate source of the allegedly spoliated evidence by which he could establish Mrs. Caro's intentions with respect to her will and challenge the authenticity of the recordings. See Arons v. Jutkowitz, 825 N.Y.S. 2d 738, 743 (2d Dep't 2006) (plaintiff in malpractice suit failed to establish intentional spoliation of evidence based on destruction of decedent's medical records because plaintiff had other means of establishing prima facie case).

Moreover, when analyzed in conjunction with his other claims, Plaintiff's intentional spoliation of evidence claim is illogical. Plaintiff cannot claim that the original recording of the February 2nd conversation is vital to proving his partnership arrangement with Mrs. Caro when he is also claiming that the recording violated his privacy rights and should not have occurred. A recording of which Plaintiff had no knowledge until the probate court hearing cannot be considered vital to establishing Plaintiff's case in probate court. Therefore, Plaintiff cannot adequately allege an inability to establish a prima facie case without the spoliated evidence. Defendants' motion to dismiss this claim is **granted**.

**4) Claims Against Defendant Bluetek, Inc.**

Defendants also assert that Defendant Bluetek, Inc. should be dismissed from this action because Plaintiff has failed to state any claims against it. The only allegations Plaintiff asserts against Bluetek, Inc. in either the original complaint or in the proposed amended complaint are the following: 1) David Weintraub is an owner, executive, and employee of Bluetek, Inc.; 2) Eric Weintraub is an employee of Bluetek, Inc.; 3) David Weintraub "used a program called 'Recorder' that a Bluetek employee had downloaded to [David's] Bluetek iPhone the week before the February 2nd, 2008 visit . . . [that] enabled the iPhone to function as a stand-alone recording device"; 4) Eric Weintraub downloaded the recordings from the February 2nd conversation to a Bluetek server; and 5) David Weintraub "transferred the iPhone to another Bluetek Inc. employee with instructions to erase the recordings and recording software for this device." (Am. Compl. Part C; ¶¶ 48-50.)

Plaintiff makes no allegations that an employee of Bluetek Inc. (other that the Weintraub brothers) invaded his privacy, intentionally caused him emotional distress, or intentionally spoliated evidence. Rather, all of Plaintiff's claims are asserted against David and Eric Weintraub only, and Plaintiff does not allege that either of them acted as Bluetek Inc.'s agent or representative when engaging in the allegedly unlawful conduct. Because both the original and proposed amended complaints are devoid of any allegations that Bluetek, Inc. engaged in tortious behavior, Defendants' motion to dismiss all claims against Defendant Bluetek, Inc. is **granted**.

**B) Motion to Amend**

On December 4, 2009 and January 12, 2010, Plaintiff moved to amend his complaint. His proposed amended complaint, which was appended to his second motion to amend filed on

January 12, 2010, asserts three additional causes of action against Defendants: interference with inheritance, violation of 18 U.S.C. § 2511, and violation of 18 U.S.C. § 1030.

Plaintiff argues that he is allowed to amend his complaint "as a matter of course" pursuant to Rule 15(a)(1)(B). Defendants argue that Plaintiff is not entitled to amend his complaint "as a matter of course" pursuant to Rule 15(a)(1)(B) because his motion to amend was untimely. Defendants also argue that the Court should deny the motion to amend because the proposed amendments are futile.

**(1) Amendment as a Matter of Course**

Federal Rule of Civil Procedure 15(a)(1) provides that "[a] party may amend its pleading once as a matter of course within . . . 21 days after service of a motion under Rule 12(b) . . ." Defendants' motion to dismiss was filed November 19, 2009. Plaintiff therefore had the right to amend his complaint as-of-course on or before December 10, 2009. Although Plaintiff first moved to amend his complaint on December 4, 2009, he did not include his amended complaint with the motion. Plaintiff's second motion to amend–which was not filed until January 12, 2010–attached a proposed amended complaint. Thus, Plaintiff failed to file an amended complaint within 21 days of the motion to dismiss.

Plaintiff nevertheless argues that he can amend his complaint "as a matter of course" because this Court granted him an extension of time to file his amended complaint. On November 30, 2009, Plaintiff filed a motion for an extension of time until January 12, 2010 to respond to Defendants' motion to dismiss, which this Court granted. Plaintiff argues that the Court's order extending the time to respond to the motion to dismiss also extended the time for him to amend his complaint as-of-course. The Court's order, however, by its own terms only

addressed the response to the motion to dismiss, not any amended pleadings Plaintiff might seek

to file. The order did not extend the time by which Plaintiff could file an amended pleading as-

of-course. Therefore, Plaintiff may only amend his complaint with "the court's leave" pursuant

to Federal Rule of Civil Procedure 15(a)(2).

**(2) Amendment with Court's Consent**

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend its pleadings

with "the court's leave" and "[t]he court shall freely give leave when justice so requires." "In the

absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on

the part of the movant, repeated failure to cure deficiencies by amendments previously allowed,

undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the

amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" <u>Victor G.</u>

<u>Reiling Assocs. & Design Innovation, Inc. v. Fisher-Price, Inc.</u>, No. 3:03-CV-222 (JBA), 2004

WL 2381719, at *2 (D. Conn. Sept. 30, 2004) (quoting <u>Foman v. Davis</u>, 371 U.S. 178 (1962)). It

is the "rare" case in which such leave should be denied. <u>Id.</u>; <u>see</u> <u>also</u> <u>Ricciuti v. N.Y.C. Transit</u>

<u>Auth.</u>, 941 F.2d 119, 123 (2d Cir. 1991).

Defendants argue that the proposed amended complaint should be denied as futile

because it would not survive a motion to dismiss pursuant to Rule 12(b)(6). <u>Senich v. American-</u>

<u>Republican, Inc.</u>, 215 F.R.D. 40, 41 (D. Conn. 2003) (noting that a futile amendment is one that

"would fail to withstand a motion to dismiss for failure to state a claim"); <u>Hayden v. County of</u>

<u>Nassau</u>, 180 F.2d 42, 53 (2d Cir. 1999) ("[W]here the plaintiff is unable to demonstrate that he

would be able to amend his complaint in a manner which would survive dismissal, opportunity to

replead is rightfully denied."). The Court will conduct an analysis of the causes of action

appearing for the first time in the proposed amended complaint to determine whether each could survive a motion to dismiss.

**(a) Interference with Inheritance (Count I in Amended Complaint)**

Plaintiff's proposed amended complaint contains a cause of action for interference with inheritance that does not appear in his original complaint. As Defendants point out, neither the Connecticut appellate courts nor the Connecticut Supreme Court has decided whether a cause of action for interference with inheritance exists under Connecticut common law. See Moore v. Bower, No. X10UWYCV054010227S (CFD), 2006 WL 2411382, at *1 (Conn. Super. July 26, 2006) (noting that Connecticut courts had not recognized the tort of interference with inheritance to date).

Nevertheless, the fact that "no Connecticut Appellate or Supreme Court decisions have been rendered on [the issue of recognizing the claim of tortious interference with an inheritance] . . . does not mean the Supreme Court will not recognize this tort . . .." Van Eck v. West Haven Funeral Home, No. CV095031256S, 2010 WL 3447830, at *5 (Conn. Super. Aug. 4, 2010) (internal citations and quotations omitted). Despite a lack of guidance at the appellate or supreme court levels, at least three Connecticut Superior Courts have recognized the cause of action. In Bocian v. Bank of Am., No. CV064019877, 2006 WL 3759305 (Conn. Super. Dec. 8, 2006), the court recognized the tort of interference with inheritance, reasoning that "[s]uch a cause of action is very similar if not identical to a recognized cause of action in Connecticut; tortious interference with a contractual right." Id. at *2. Similarly, in DePasquale v. Hennessey, No. CV106007472S, 2010 WL 3787577, at *3 (Conn. Super. Aug. 27, 2010), in recognizing the cause of action, the court reasoned that "Section 774B of the Restatement Second of Torts, an

authority often relied on by our appellate courts in outlining the contours of tort law in our state, provides for a claim of tortious interference with an inheritance . . ." Moreover, the court found that the cause of action "is consistent with other causes of action and remedies that have been recognized under Connecticut law and public policy, including the established remedy of imposing a constructive trust to protect the interests of persons who have no more than an expectancy of receiving a benefit, such as when a decedent is prevented, because of fraud, from making a particular testamentary disposition." Id. Accord Van Eck, 2010 WL 3447830, at *5. Therefore, this Court is persuaded that a cause of action for tortious interference with inheritance exists under Connecticut law.

The Restatement defines the tort as follows: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." Restatement (Second) of Torts § 774B (2010). The DePasquale court set forth the following elements of the claim: "1) the existence of an expected inheritance; 2) the defendant's knowledge of the expectancy; 3) tortious conduct by the defendant, such as fraud or undue influence; and 4) actual damages to the plaintiff resulting from the defendant's tortious conduct." DePasquale, 2010 WL 3787577, at *3. Defendants argue that, even if this Court recognizes an interference with inheritance cause of action, Plaintiff's allegations fail to state a viable claim. In particular, Defendants assert that Plaintiff has not alleged any fraud or undue influence on their part, any benefit they derived from their conduct, or actual damages.

The Court does not find Defendants' arguments persuasive. The amended complaint alleges that the Weintraub brothers played "fabricated audio files for the Probate Court that

contained fragments of the recordings on February 2nd." (Am. Compl. ¶ 42.) Defendants' misrepresentations to the probate court in the form of the "fabricated audio files" were for the purpose of denying Plaintiff his interest in his late wife's estate. The allegations make clear that the Weintraub brothers benefitted from this interference as they expected to inherit any interest in their mother's estate that was denied to Plaintiff. (See id. ¶ 15.) The amended complaint also alleges the following damages: Plaintiff's denial of Letters of Administration for Mrs. Caro's estate; the estate administrator's estimated charges of at least $150,000; and Plaintiff's loss of the value of the marital home while his late wife's assets are being adjudicated in probate court. (Id. ¶¶ 55-57.) These allegations appear to be sufficient to withstand a motion to dismiss, and thus cannot be considered futile. Plaintiff may amend his complaint to add a cause of action for interference with inheritance.

**(b) Violation of 18 U.S.C. § 1030 (Count IV in Amended Complaint)**

The second newly-added cause of action in the proposed amended complaint is a violation of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030. The claim is based on newly-added allegations that Eric Weintraub exceeded his authorized use of Plaintiff's computer. According to the amended complaint, in the days following Mrs. Caro's death, Plaintiff allowed Eric Weintraub to use Plaintiff's computer while at Plaintiff's home solely for the purpose of checking his e-mail. While doing so, Eric Weintraub changed Mrs. Caro's personal e-mail password and deleted financial files containing evidence of loans Mrs. Caro had made to the Weintraub brothers and the Corrigans. (Am. Compl. ¶¶ 31-33, 52.) "As a result of Defendant Eric [sic] reckless and/or intentional destruction of data and passwords on the laptop computer, Administrator Meerbergen found that neither of the Weintraub Defendants owed

monies to Elizabeth . . . [thus] directly denying me half the value of the loans to the Weintraub brothers and the $250,000 owed to Elizabeth by Thomas and Lynn Corrigan."  (Id. ¶ 58.)

The CFAA prohibits, *inter alia*, "intentionally access[ing] a computer without authorization or exceed[ing] authorized access, and thereby obtain[ing] . . . information from any protected computer."  A "protected computer" is defined as one that "is used in or affecting commerce or communication."  18 U.S.C. § 1030(e)(2)(B).  Plaintiffs must plead one of the five injuries set forth in § 1030(g).  The only injury relevant to Plaintiff's claim requires "loss to 1 or more persons during any 1-year period . . . aggregating at least $5,000 in value."  Id. § 1030(c)(4)(A)(i)(I).  Therefore, to state a claim under CFAA, Plaintiff must allege that (1) Eric Weintraub intentionally accessed a protected computer (2) without authorization or in excess of his authorized access, (3) thereby obtaining information from the protected computer (4) and causing Plaintiff qualifying monetary losses in excess of $5,000.

Defendants argue that Plaintiff has not stated a valid claim for a CFAA violation because Eric Weintraub had Plaintiff's permission to use his computer.  The CFAA, however, also prohibits exceeding authorized access, which is defined as "access[ing] a computer with authorization and . . . us[ing] such assess to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).  This is exactly what Plaintiff has alleged in his amended complaint.  See also Monson v. Whitby School, Inc., No. 3:09CV1096 (MRK), 2010 WL 3023873, at *4 (D. Conn. Aug. 2, 2010) (holding that, to state a valid CFAA counterclaim, the defendant need only allege that the plaintiff exceeded the scope of whatever computer authorization she was granted).

Whether Plaintiff has adequately pleaded damages is a more difficult question.  Losses that

may be included to meet the $5,000 threshold include "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. 1030(e)(11). This section has been interpreted to mean "any remedial costs of investigating the computer for damage, remedying the damage and any costs incurred because the computer cannot function while or until repairs are made." Nexans Wires S.A, v. Sark-USA, Inc., 319 F. Supp. 2d 468, 477 (S.D.N.Y. 2004), aff'd, 166 F. App'x 559 (2d. Cir. 2006) (holding that, because § 1030(e)(11) limits "loss" to costs incurred because of interruption of service, loss of revenues resulting from the defendants' unauthorized access and use of information to unfairly compete for business did not constitute "loss" within the meaning of 18 U.S.C. 1030(e)(11)). See also Tyco Int'l Inc. v. John Does, 1-3, No. 01 Civ.3856(RCC)(DF), 2003 WL 23374767, at *3 (S.D.N.Y. Aug. 29, 2003) ("While . . . it is true that the CFAA allows recovery for losses beyond mere physical damages to property, the additional types of damages awarded by courts under the Act have generally been limited to those costs necessary to assess damage caused to the plaintiff's computer system or to resecure the system in the wake of a spamming attack."); Cenveo Corp. v. CelumSolutions Software GMBH & Co. KG, 504 F. Supp. 2d 574, 581 (D. Minn. 2007) (granting motion to dismiss CFAA claim because the complaint was "devoid of allegations that [the defendant's] access caused an interruption to service or that [the plaintiff] incurred costs associated with responding and conducting damage assessment").

Although Plaintiff has alleged damages in excess of $5,000, the damages have nothing to do with the costs incurred because of interruption of computer service or in assessing and remedying

damage to Plaintiff's computer system.  Plaintiff essentially alleges that, due to Eric Weintraub's deletion of computer files containing evidence of Mrs. Caro's loans to him and his brother, Plaintiff wrongfully lost his inheritance.  He also claims that Eric Weintraub's actions somehow denied him half the value of the loans purportedly made to the Weintraub brothers and the Corrigans.  (Am. Compl. ¶ 58.)  Much like the loss of revenues from unfair competition due to defendant's unauthorized access in Nexans Wires S.A, Plaintiff's lost inheritance or lost loan repayments are not cognizable losses under the CFAA.  Therefore, Plaintiff cannot state a valid claim under the CFAA. Plaintiff's motion to amend his complaint to add a CFAA cause of action is denied as futile.

**(c) Violation of 18 U.S.C. § 2511 (Count V in Amended Complaint)**

The amended complaint also adds a cause of action under Title III of the Omnibus Crime Control and Safety Street Act ("Title III"), 18 U.S.C. §§ 2510-21, based on David Weintraub's surreptitious recording of the February 2nd conversation.  (Am. Compl. ¶ 81.)  In a prior action brought in the District of Connecticut against the Weintraub brothers and the attorneys who represented them in probate court, Plaintiff alleged that David Weintraub's recording of the February 2nd conversation was an unlawful interception and disclosure of Plaintiff's oral communications with his wife in violation of Title III.  In dismissing the claim, this Court held that Plaintiff had no reasonable expectation of privacy in the February 2nd conversation because it occurred in the presence of the Weintraub brothers.  Because Plaintiff's new Title III claim is based on the same oral communications that were at issue in the previous action, Plaintiff is barred by *res judicata* from relitigating this claim.  It is clear that this claim would not survive a motion to dismiss, and therefore it is futile.  Plaintiff cannot amend his complaint to add a Title III cause of action.

**IV.    Conclusion**

For the reasons stated herein, Defendants' motion to dismiss [Doc. No. 21] is **granted in part and denied in part**. Defendants' motion is granted as to Plaintiff's intentional spoliation of evidence claim and denied as to Plaintiff's claims for invasion of privacy by intrusion upon seclusion and intentional infliction of emotional distress. Defendants' motion to dismiss all claims against Defendant Bluetek, Inc. is granted, and Defendant Bluetek Inc. is dismissed from this action. Plaintiff's motions to amend his complaint [Doc. Nos. 33, 46] are **granted in part and denied in part.** Plaintiff may amend his complaint to add a count alleging intentional interference with inheritance, but may not add counts alleging violations of 18 U.S.C. § 2511 or 18 U.S.C. § 1030 because these claims would be futile. Plaintiff has 10 days from the date of this order to file his Amended Complaint.

SO ORDERED.

Dated at New Haven, Connecticut, this __31st__ day of October, 2010.

_____
              /s/

Peter C. Dorsey, U.S. District Judge
United States District Court